**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**ELIZABETH M. VOSS,**
Plaintiff-Appellant,

v.

**SACRAMENTO SUPERIOR COURT**
Defendant-Appellee.

**Ninth Cir. No. 26-6247**

D.C. No. 2:26-cv-01949-DC-JDP (PS)

**APPELLANT ELIZABETH M. VOSS'S OPENING BRIEF**

Appeal from the United States District Court for the Eastern District of California
Hon. Dena M. Coggins, United States District Judge
Final Order and Judgment entered September 18, 2026 (ECF Nos. 25–26)

**ELIZABETH M. VOSS**
2733 Via Villaggio | Sacramento, California 95864
(310) 625-8880 | vossbaf@gmail.com
Appellant, Pro Se

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .... iii
I. INTRODUCTION .... 1
II. JURISDICTIONAL STATEMENT .... 9
A. District-Court Jurisdiction .... 9
B. Appellate Jurisdiction and Timeliness .... 9
III. ISSUES PRESENTED .... 10
IV. STATEMENT OF THE CASE .... 14
A. Nature of the Action and Operative Pleading .... 14
B. Findings and Recommendations, Specific Objections, and Final Order .... 29
C. Emergency, Preservation, and Post-Judgment Proceedings .... 32
V. SUMMARY OF ARGUMENT .... 38
VI. STANDARDS OF REVIEW .... 44
VII. ARGUMENT .... 47
A. Critical Legal Background: Screening and Absolute Immunity .... 47
B. The Adoption Order Used a Review Standard Incompatible with § 636(b)(1)(C) for Specifically Objected-To Portions .... 50
C. Phillips Requires Identification of the Particular Function Before Absolute Quasi-Judicial Immunity Can Be Applied .... 52
D. The FAC Pleads Substantive Eligibility Gatekeeping, Not Neutral Docketing, and Immunity Is Not Established on the Face of the Pleading .... 56
E. The Operative Defendants, Capacities, Prospective Relief, and Three Constitutional Claims Required Separate Screening .... 57
F. Dismissal Without Leave to Amend Was Not Supported by a Futility Analysis Directed to the Operative FAC .... 58
G. The Rule 65 and Preservation Rulings Were Derivative of the Threshold Dismissal and Should Be Vacated or Reconsidered on Remand .... 60
H. If the Judgment Is Vacated, the § 455(a) Issue Should Be Resolved Before Further Magistrate-Judge Participation .... 63
VIII. CONCLUSION .... 66

## TABLE OF CONTENTS (continued)

Page

STATEMENT OF RELATED CASES ........ 69
CERTIFICATE OF COMPLIANCE ........ 70
ADDENDUM ........ 71

# TABLE OF AUTHORITIES

Page

**Cases**

Acres Bonusing, Inc. v. Marston, 17 F.4th 901 (9th Cir. 2021) .............................53

American Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470 (9th Cir. 1985) ...........................................................................................................33

Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993) .............................................................. 5, 29, 38–39, 41, 47, 52, 55–56, 67

Bishop Paiute Tribe v. Inyo County, 863 F.3d 1144 (9th Cir. 2017) ......................47

Brown v. Roe, 279 F.3d 742 (9th Cir. 2002) .........................................................45

Carlson v. Department of Fish & Game, 68 Cal. App. 4th 1268 (1998) .................53

Cohen v. ConAgra Brands, Inc., 16 F.4th 1283 (9th Cir. 2021) .............................45

Courthouse News Service v. Planet, 750 F.3d 776 (9th Cir. 2014) ...................57–58

CPC Patent Technologies Pty Ltd. v. Apple Inc., 34 F.4th 801 (9th Cir. 2022) .........................................................................................7, 45, 51, 67

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ..........43, 59

Forrester v. White, 484 U.S. 219 (1988) ...............................................5, 38, 47, 67

Garmon v. County of Los Angeles, 828 F.3d 837 (9th Cir. 2016) ..........................44

Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980) ................................................62

Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010) .......................................................44

Hernandez v. Sessions, 872 F.3d 976 (9th Cir. 2017) ............................................46

hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180 (9th Cir. 2022) ...........................33

In re Castillo, 297 F.3d 940 (9th Cir. 2002) ...............................5, 29, 38, 41, 47, 67

In re Creech, 119 F.4th 1114 (9th Cir. 2024) .........................................................64

Krechman v. County of Riverside, 723 F.3d 1104 (9th Cir. 2013) .........................65

Liteky v. United States, 510 U.S. 540 (1994) .........................................................64

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) ..........................43, 45, 59

## TABLE OF AUTHORITIES (continued)

Page

**Cases (continued)**

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873 (9th Cir. 2009) ....... 33

Moore v. Urquhart, 899 F.3d 1094 (9th Cir. 2018) ....... 57

Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385 (9th Cir. 1987) ....... 5, 29, 38–43, 48, 52, 67

Orand v. United States, 602 F.2d 207 (9th Cir. 1979) ....... 7, 32, 39, 45, 50, 67

Phillips v. Goldman (In re Gilman), No. 24-2249, slip op. (9th Cir. May 7, 2026) (en banc) ....... 5, 38–39, 41, 44–45, 47, 52, 55–56, 67

Rojas v. Cutsforth, 67 Cal. App. 4th 774 (1998) ....... 53

Rosati v. Igbinoso, 791 F.3d 1037 (9th Cir. 2015) ....... 43, 59

Stump v. Sparkman, 435 U.S. 349 (1978) ....... 54–56

Swoben v. United Healthcare Insurance Co., 848 F.3d 1161 (9th Cir. 2016) ....... 43, 45, 59

United Farm Workers of America v. Agricultural Labor Relations Board, 37 Cal. 3d 912 (1985) ....... 53

United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009) (en banc) ....... 45–46

United States v. Holland, 519 F.3d 909 (9th Cir. 2008) ....... 47, 64

United States v. Remsing, 874 F.2d 614 (9th Cir. 1989) ....... 7, 39, 45, 51, 67

Voit v. Superior Court, 201 Cal. App. 4th 1285 (2011) ....... 53

Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012) ....... 44

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) ....... 62

## TABLE OF AUTHORITIES (continued)

Page

**Constitutional Provisions**

U.S. Const. amend. I ....................9, 13, 15, 17, 58, 71
U.S. Const. amend. IV ....................7, 13, 71
U.S. Const. amend. XIV ....................9, 13, 15, 17, 71

**Federal Statutes**

28 U.S.C. § 455(a) .................... 1, 6, 8–9, 13, 27–28, 31, 36, 44, 47, 63–65, 67–68, 72
28 U.S.C. § 636(b)(1)(C) .................... 7, 10, 13, 38, 45, 50–51, 66, 71–72
28 U.S.C. § 1291 ....................9–10, 38
28 U.S.C. § 1331 ....................9
28 U.S.C. § 1343(a)(3) ....................9
28 U.S.C. § 1915 ....................13
28 U.S.C. § 1915(e)(2)(B) ....................43–44, 57, 72
42 U.S.C. § 1983 .................... 1, 7, 9, 14, 37, 43, 57, 72

## TABLE OF AUTHORITIES (continued)

Page

**California Statutes**

Cal. Civ. Proc. Code § 367 ....................23, 73
Cal. Civ. Proc. Code § 387 ....................22, 26, 41, 73–75
Cal. Civ. Proc. Code § 389 ....................23, 75–76
Cal. Civ. Proc. Code § 473(a)(1) ....................23, 76
Cal. Civ. Proc. Code § 473(b)....................23, 26, 76
Cal. Civ. Proc. Code § 473(d)....................23, 26, 76
Cal. Civ. Proc. Code §§ 526–527 ....................23, 26, 77–79

**Federal Rules of Appellate Procedure**

Fed. R. App. P. 3(d) ....................10
Fed. R. App. P. 4(a)(1)(A) ....................10
Fed. R. App. P. 4(a)(4)(A) ....................9–10
Fed. R. App. P. 10(a) ....................10
Fed. R. App. P. 21(a)(1)....................24
Fed. R. App. P. 32(f)....................70

## TABLE OF AUTHORITIES (continued)

Page

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8 .......... 12, 24, 35, 43, 59
Fed. R. Civ. P. 12(b)(6) .......... 44
Fed. R. Civ. P. 15 .......... 20–21, 46
Fed. R. Civ. P. 15(a)(2) .......... 20, 46
Fed. R. Civ. P. 26(f) .......... 35, 61
Fed. R. Civ. P. 59(e) .......... 9
Fed. R. Civ. P. 62(d) .......... 10, 36–37
Fed. R. Civ. P. 65 .......... passim
Fed. R. Civ. P. 65(a)(2) .......... 33, 73
Fed. R. Civ. P. 72 .......... passim
Fed. R. Civ. P. 72(b)(3) .......... 7, 10, 38, 45, 50–51, 73

**Federal Rules of Evidence**

Fed. R. Evid. 201 .......... 10

**Ninth Circuit Rules**

9th Cir. R. 28-2.6 .......... 69

## I. INTRODUCTION

This appeal arises from the pre-service dismissal of a verified [42 U.S.C. § 1983] complaint on absolute quasi-judicial-immunity grounds. The dismissal did more than terminate the operative complaint. It simultaneously foreclosed Appellant's pending [Rule 65] emergency application, including relief directed at ending an alleged ongoing constitutional injury; rendered Appellant's [§ 455(a)] disqualification motion moot without a merits determination; and terminated consideration of thirteen specific [Rule 72] objections challenging the factual, functional, procedural, and legal premises of the magistrate judge's Findings and Recommendations ("F&R").

The principal dispute concerned absolute quasi-judicial immunity. Appellant contends that the magistrate judge applied the wrong immunity framework by beginning with the generalized label of "docketing," rather than first identifying the particular function actually alleged, and then concluding that Defendants were absolutely immune without identifying controlling authority extending such immunity to the person-specific, identity-based, antecedent substantive eligibility determinations allegedly made without judicial authority. The objections specifically disputed that functional characterization and alleged a two-step exercise of authority materially different from neutral clerical processing: filing clerks and an Operations Manager/Clerk Supervisor first assumed an adjudicatory

role by making identity-based substantive eligibility determinations concerning whether Appellant could invoke legally available, facially nonfrivolous judicial procedures—questions Appellant contends were reserved to a judicial officer—and then resumed their ministerial roles to enforce those independently made determinations through ancillary administrative mechanisms that rejected, delayed, withheld, or otherwise prevented the filings from reaching a judicial officer for adjudication. The entire dismissal rested on accepting the magistrate judge's characterization of the challenged conduct as absolutely immune.

The threshold question is therefore narrow: Whether absolute quasi-judicial immunity extends to nonjudicial court personnel who, without statutory, rule-based, judicial, or delegated authority, allegedly perform the antecedent adjudicative function of independently determining a particular person's legal eligibility to invoke lawful judicial procedures, and then enforce their own substantive determinations through the ministerial mechanisms they control—rejecting, delaying, withholding, or refusing to route the person's filings to a judicial officer for decision.

If that conduct is absolutely immune, the functional-immunity doctrine loses the very distinction it is supposed to preserve. Nonjudicial employees could assume adjudicative authority they do not possess, independently decide substantive legal questions reserved to judicial officers, and then use their

ministerial control over filing processes to enforce those decisions—all while obtaining absolute immunity merely because the final act of enforcement took clerical form. Immunity cannot be transformed by the mechanism used to implement the challenged decision. The relevant function is the unauthorized substantive determination that produced the rejection, not the ministerial act by which that determination was carried out. Holding otherwise would not preserve the functional distinction between judicial and clerical acts; it would eliminate it.

The Fourth Amended Complaint ("FAC") does not challenge ordinary filing administration, technical review, routine docketing, or the faithful execution of any judicial directive. It challenges a different antecedent function altogether. The FAC alleges that Defendant Hassan Alleyne, the Operations Manager/Clerk Supervisor, together with participating clerk personnel, repeatedly and intentionally assumed judicial authority to decide substantive questions concerning Voss's legal eligibility to invoke judicial process—including her eligibility to seek lawful intervention, capacity to file individually, party status, ability to pursue appellate review, the legal consequences of attorney substitution or withdrawal, and access to emergency judicial relief—and then gave those independently made determinations operative effect through the filing mechanisms under their control by rejecting, delaying, diverting, or withholding her papers from judicial consideration. [ECF No. 16 ¶¶ 2–4]. Critically, the FAC alleges that no statute,

rule, local rule, judicial order, or lawful delegation authorized Alleyne or the participating clerk personnel to decide those substantive questions. The challenged conduct therefore is not the ministerial processing of a determination already made by a court; it is the alleged making of the antecedent substantive determination itself, followed by the use of ministerial filing controls to enforce it.

The alleged sequence is therefore:

1. Voss attempts to invoke a legally available judicial procedure →

2. Defendants allegedly assumed and exercised an antecedent adjudicative function: independently determining Voss's legal eligibility to invoke judicial procedures that governing law made available to her and whose applicability was for a judicial officer—not clerk personnel—to decide. →

3. Defendants then used or directed ancillary administrative filing mechanisms to give operative effect to, and enforce, their independently made substantive determinations by rejecting, withholding, delaying, diverting, or refusing to route Voss's filings to a judicial officer for consideration.

That distinction controls the immunity inquiry. [Forrester], [Antoine], [Castillo], and most recently the en banc decision in [Phillips v. Goldman (In re Gilman)] require courts to identify the particular function actually challenged before extending absolute immunity to a nonjudicial officer. [Mullis] protects

qualifying clerical filing functions integral to the judicial process; it does not eliminate that threshold inquiry or transform an antecedent substantive determination into protected clerical activity merely because clerical rejection was later used to enforce it. The question at screening was therefore not whether court clerks can ever receive absolute immunity, but whether absolute immunity was established on the face of this FAC for the particular functions actually alleged.

If this Court determines that the challenged conduct is not protected by absolute quasi-judicial immunity, then the threshold premise on which the entire dismissal rested fails. The judgment should therefore be vacated and the case remanded so that the district court may address the matters it did not independently reach after stopping at immunity, including Appellant's three separately pleaded constitutional claims; the individual- and official-capacity claims against the operative Defendants; the requests for damages, declaratory relief, and prospective injunctive relief; the renewed [Rule 65] application for emergency, preservation, neutral-access, and appropriately tailored restorative relief; the requests for expedited proceedings and limited discovery necessary to identify the Doe Defendants and obtain the audit, routing, supervisory, flag, and communications records alleged to be material; the request for preservation of evidence; the question whether further amendment would be futile; and the pending [§ 455(a)]

disqualification issue and expedited district-judge review that were rendered moot when the action was closed.

A second, independent error concerns the procedural chronology and the district judge's de novo review. Voss filed this action in May 2026, amended in June, and filed the SAC after learning a defendant's true name. The accompanying ex parte application remained pending nearly two months despite follow-up with the magistrate judge's office. After Voss complained to the Ninth Circuit, the magistrate judge required two further amendments without addressing the SAC's immunity and [Rooker–Feldman] arguments, the continuing, compounding emergency and injury, or evidence-preservation concerns. Voss declined consent to final disposition by a magistrate judge and, following the F&R, sought recusal under [§ 455(a)] and de novo review.

Voss filed thirteen specific [Rule 72] objections challenging the F&R's factual, functional, procedural, and legal premises, including its characterization of the alleged conduct as ordinary clerical activity. [ECF No. 22 at 2–15]. Yet the adoption order stated that "[t]he court presumes that any findings of fact are correct," while separately reviewing legal conclusions de novo. [ECF No. 25 at 2]. Under [28 U.S.C. § 636(b)(1)(C)], [Rule 72(b)(3)], [Orand], [Remsing], and [CPC Patent], the specifically challenged factual and mixed premises required

independent de novo determination; a presumption of correctness could not substitute for that review.

Those rulings terminated the action at the threshold—before service, discovery, identification of the Doe defendants, development of the evidentiary record, or any evidentiary hearing. [ECF No. 25] dismissed the FAC, denied [Rule 65] relief, and closed the case. Yet the sworn record alleged an active and escalating emergency: the destruction of two operating businesses, imminent extinction of related businesses absent immediate intervention, continuing loss of customers and goodwill, deterioration and loss of evidence, and compounding property and commercial injury. The underlying deprivation of property also gave rise to [Fourth Amendment] issues in related proceedings, while this [§ 1983] action alleged that clerk-level gatekeeping obstructed access to the judicial procedures through which those claims and requests for relief could be presented to a judicial officer. Those injuries had not ceased when judgment was entered; they were continuing and compounding. Accordingly, the denial of [Rule 65] relief and preservation measures—and the decision to terminate the action altogether—cannot be divorced from the threshold immunity and de novo-review errors that prevented the case from proceeding beyond screening. If those threshold determinations were erroneous, the rulings that flowed from them necessarily require reconsideration as well.

Appellant asks this Court to decide disputed facts in the first instance. She asks that the September 18, 2026 Order Adopting Findings and Recommendations [ECF No. 25] and resulting Judgment [ECF No. 26] be reversed or vacated and the case remanded for application of the correct [function-specific immunity analysis], [de novo review standard], and separate screening of the actual defendants, capacities, constitutional claims, and prospective relief pleaded in the operative FAC [ECF No. 16], together with reconsideration of the derivative [Rule 65], [preservation], and [§ 455(a)] matters as appropriate.

## II. JURISDICTIONAL STATEMENT

### A. District-Court Jurisdiction

The district court had original [federal-question] and [civil-rights] jurisdiction under [28 U.S.C. §§ 1331 and 1343(a)(3)] because the operative Fourth Amended Complaint asserted claims under [42 U.S.C. § 1983] for alleged violations of Voss's rights under the [First Amendment] and [Fourteenth Amendment]. [ECF No. 16 ¶¶ 1–9, 54–74]. The FAC sought damages against the [individual-capacity defendants] and declaratory and prospective injunctive relief against defendants in their [official capacities]. [Id. ¶¶ 75–79].

### B. Appellate Jurisdiction and Timeliness

The district court entered its final Order Adopting Findings and Recommendations and Judgment on September 18, 2026. [ECF Nos. 25–26]. [ECF

No. 25] dismissed the FAC without leave to amend, denied the renewed [Rule 65] application, denied Voss's pending [§ 455(a)] and expedited-review motions as moot, and closed the case. The resulting judgment was a final decision under [28 U.S.C. § 1291].

Voss proceeded directly to appellate review. She filed no [Rule 59(e)] motion or other post-judgment motion listed in [Federal Rule of Appellate Procedure 4(a)(4)(A)]. Her [§ 455(a)] motion, [ECF No. 24], had been filed before judgment and was itself disposed of in [ECF No. 25]; it is not relied upon to toll the appeal period. On September 21, 2026—three days after judgment—Voss filed her Notice of Appeal and Plaintiff's Emergency Ex Parte Motion for Evidence and Preservation Order Pending Appeal expressly designating [ECF Nos. 25 and 26]. [ECF No. 28]. The district clerk thereafter transmitted notice under [Federal Rule of Appellate Procedure 3(d)], confirming the September 21 filing date. [ECF No. 29].

The appeal was therefore timely under [Federal Rule of Appellate Procedure 4(a)(1)(A)], and this Court has jurisdiction under [28 U.S.C. § 1291]. Also on September 21, Voss filed an emergency evidence-preservation request under [Federal Rule of Civil Procedure 62(d)], [ECF No. 27]. That request sought to preserve evidence and effective appellate relief and is not relied upon to toll or extend the appeal period under [Federal Rule of Appellate Procedure 4(a)(4)(A)].

The chronology relied upon here is reflected in the Eastern District's docket, orders, and filed papers, which form part of the record on appeal under [Federal Rule of Appellate Procedure 10(a)]. To the extent judicial notice is necessary, Appellant requests notice under [Federal Rule of Evidence 201] of the existence, filing dates, and procedural sequence of those court records, not the truth of disputed factual assertions contained within them.

## III. ISSUES PRESENTED

1. Whether the district court performed the independent de novo determination required by [28 U.S.C. § 636(b)(1)(C)] and [Rule 72(b)(3)] as to the specifically objected-to portions of the F&R, including disputed factual, functional, mixed, and legal premises, where the adoption order expressly presumed findings of fact correct while stating only that the magistrate judge's legal conclusions were reviewed de novo.

2. Whether the Fourth Amended Complaint was properly dismissed at screening on absolute quasi-judicial-immunity grounds without applying the required [function-specific analysis] to the particular acts alleged, including substantive eligibility determinations and filing restrictions that the FAC alleged were unauthorized by statute, rule, judicial order, or lawful delegation.

3. Whether, under that [function-specific analysis], filing personnel's alleged independent determination of Voss's substantive legal eligibility could

properly be characterized as protected “docketing” or clerical activity merely because clerical filing mechanisms were later used to enforce that determination.

4. Whether the district court properly disposed of the FAC’s three distinct constitutional claims and requests for prospective declaratory and injunctive relief through a generalized immunity determination without separately analyzing the claims, capacities, particular functions, and forms of relief pleaded in the operative complaint.

5. Whether dismissal without leave to amend was proper where the pleading history included an earlier immunity dismissal, a materially expanded response, a separate [Rule 8] dismissal based on length, a court-ordered twenty-page FAC, and no independent determination that amendment of the operative pleading would necessarily be futile.

6. Whether reliance on superseded pleadings, captions, parties, or allegations—and failure to analyze the operative FAC according to the defendants, capacities, claims, and functions actually pleaded—materially affected the screening dismissal.

7. Whether the district court’s threshold immunity ruling improperly resulted in denial of [Rule 65] and preservation relief without independent consideration of the sworn allegations of continuing constitutional injury, irreparable harm,

business extinction, imminent threats to remaining businesses, loss of evidence, and loss of the former status quo.

8. Whether, if the threshold immunity dismissal is reversed or vacated, the denial of [Rule 65] relief should likewise be vacated and remanded for prompt consideration under the proper preliminary- and mandatory-injunction standards, including the verified pleadings, sworn declarations, documentary evidence, continuing emergency, and alleged loss of the former status quo.
9. Whether the alleged destruction of the former status quo—including completed business-extinction harm, continuing threats to related businesses and brands, preservation risks, and ongoing property and commercial injury—requires prompt consideration on remand of preservation and appropriately tailored mandatory relief, including the requested restorative relief, rather than treatment of the emergency as extinguished by dismissal. The underlying [Fourth Amendment] property-and-seizure allegations supply context for the judicial remedies Voss alleges she was prevented from presenting; the federal claims here arise under the [First Amendment] and [Fourteenth Amendment].
10. Whether, if the judgment is vacated, the district court's mootness disposition of Voss's pending [§ 455(a)] motion should also be vacated so that the objective disqualification issue is resolved before any renewed dispositive or emergency proceedings involving the same magistrate judge.

11. Whether, considering the procedural chronology as a whole—from commencement of the action and the allegations presented in each successive pleading, through the events occurring while the case remained pending, the repeated requests for preservation and emergency relief, the court-ordered FAC, the specific [Rule 72] objections, and the final pre-service dismissal—the district court afforded the operative claims and continuing emergency the review required by [28 U.S.C. § 1915], [28 U.S.C. § 636(b)(1)(C)], [Rule 72], [Rule 65], and the governing [function-specific immunity framework], or whether the cumulative procedural errors require vacatur and remand.

## IV. STATEMENT OF THE CASE

### A. Nature of the Action and Operative Pleading

Voss brought this [§ 1983] action not to challenge any judicial ruling, but to challenge alleged conduct by filing-intake personnel at the Sacramento County Superior Court's Carol Miller Justice Center that occurred antecedent to judicial review—before her filings reached, or were permitted to reach, a judicial officer authorized to decide them. The operative FAC alleges a two-step course of conduct distinct from judicial decisionmaking. First, nonjudicial court personnel allegedly assumed and exercised an antecedent adjudicative function by making person-specific, identity-based substantive determinations concerning Voss's legal eligibility to invoke particular judicial procedures. Second, they allegedly gave

those independently made determinations operative effect through filing-intake and other ancillary administrative mechanisms—rejecting, delaying, withholding, diverting, or refusing to route her filings to a judicial officer for consideration. The FAC does not seek reversal, vacatur, or appellate review of the unlawful-detainer judgment, nor does it name any state judicial officer as a defendant. [ECF No. 16 ¶¶ 1–7]. The underlying unlawful-detainer proceedings are pleaded solely as factual context necessary to establish urgency, causation, the consequences of foreclosed or delayed access to judicial review, and the continuing need for prospective relief. Unlawful-detainer proceedings are summary proceedings conducted on an exceptionally compressed timetable. That procedural structure materially magnified the consequences of the challenged filing-intake conduct. A rejection, delay, diversion, or withholding that might later be corrected in ordinary civil litigation could, in the unlawful-detainer context, effectively extinguish the opportunity for meaningful judicial review before possession, property interests, or other protected rights were irreversibly affected.

The FAC alleges that, within this time-sensitive procedural framework, Defendants' antecedent eligibility determinations and resulting obstruction of filing access caused immediate and continuing injuries to Voss's rights under the [First Amendment] and [Fourteenth Amendment] by preventing or materially

delaying her ability to place legally available requests for relief before a judicial officer while meaningful relief remained possible.

The operative FAC names Hassan H. Alleyne, Operations Manager/Clerk Supervisor at the Sacramento Superior Court's Carol Miller Justice Center, and Does 1–25. [ECF No. 16 at 1, ¶¶ 7–9]. After Voss learned Alleyne's identity, the SAC first named him as a defendant in both capacities: individually for damages and officially solely for prospective declaratory and injunctive relief addressing the allegedly ongoing unconstitutional clerk-level practices. The operative FAC retained Alleyne and those capacity-specific claims for relief. It alleges that Alleyne exercised direct supervisory and operational authority over filing intake, electronic routing, filing rejections, and supervisor-review procedures, and that participating clerk personnel acted under his direction or pursuant to practices he allegedly directed, implemented, or enforced in imposing the challenged filing restrictions and making the disputed eligibility determinations. The Doe Defendants are the then-unidentified clerk personnel, lead clerks, supervisors, administrative employees, and other responsible actors alleged to have personally participated in, implemented, directed, or enforced the challenged conduct. [ECF No. 16 ¶ 9]. Voss expressly sought discovery to ascertain their identities, but the district court dismissed the action at screening—before service or discovery could occur and before Voss had any opportunity to identify and substitute the

responsible individuals. Their continued designation as Doe Defendants therefore resulted from the action's pre-service termination, not from an absence of allegations identifying the conduct, roles, or participation attributed to them.

The FAC asserts three independent constitutional claims arising from the challenged conduct:

(1) denial of the [First Amendment] rights of access to the courts and to petition for redress;

(2) [First Amendment] retaliation; and

(3) deprivation of procedural due process under the [Fourteenth Amendment]. [ECF No. 16 ¶¶ 54–74].

Consistent with the allegedly ongoing nature of the constitutional injury, the Prayer seeks prospective declaratory and injunctive relief directed at filing access and judicial routing, preservation of relevant electronic and supervisory records, and narrowly tailored expedited discovery necessary to identify the responsible clerical actors and determine the source, implementation, and operation of the challenged restrictions—including supervisor-level directives, case or person-specific flags, routing data, and electronic audit histories bearing directly on the constitutional claims and the asserted immunity defense. [Id. ¶¶ 75–79].

Voss had previously sought emergency relief at [ECF No. 11]; the materially expanded emergency posture and renewed [Rule 65] request following the FAC

are addressed below. After filing the operative FAC, she renewed her request for [Rule 65] relief at [ECF No. 17], supported by the expanded factual record and allegations of continuing and escalating constitutional injury. The renewed application sought prospective and mandatory relief directed at filing access, preservation of evidence, and restoration necessitated by the alleged continuing injury.

The pleading history matters because the final order relied on Voss's prior amendments to support futility. But by June 26, 2026—while preservation of the then-existing status quo remained practically available—the SAC had already addressed the asserted threshold defects. It expressly distinguished the underlying unlawful-detainer proceedings from the independent federal constitutional injury, pleading the UD record not for review of its merits, but to establish the compressed emergency timeline, causation, actual injury, diligence, the nonfrivolous judicial procedures allegedly obstructed, and the need for prospective relief. [ECF No. 10 ¶¶ 24–36].

The SAC identified the allegedly obstructed intervention, emergency, appellate, writ-related, mandatory-relief, preservation, and related-case filings, and pleaded the colorable matters they sought to place before a judicial officer. [Id. ¶¶ 28–35]. It disclaimed federal adjudication of those underlying matters; the alleged injury was the obstruction of nonfrivolous filings before they could reach an

authorized judicial decisionmaker while meaningful relief remained available. [Id. ¶¶ 24–27, 36]. The SAC also directly addressed immunity and [Rooker-Feldman], alleging that the challenged conduct was neither judicial decisionmaking nor execution of a specific judicial directive, but clerk-level eligibility determinations and filing barriers imposed before judicial review—and that no identified judicial order directed rejection of the filings at issue. [Id. ¶¶ 65–71].

Immunity therefore was not a newly discovered pleading defect. The SAC had already anticipated the defense and pleaded the functional distinction that now controls this appeal. The subsequent amendment process followed—not preceded—the presentation and rejection of that theory. Simultaneously, Voss placed the active, escalating, growing emergency before the court through an ex parte request for injunctive and preservation relief while preservation of the existing status quo remained practically possible.

For nearly two months, the SAC and accompanying emergency application remained pending without action. During that interval, Voss twice communicated with the magistrate judge's chambers concerning the unresolved filings. Those communications placed chambers on notice not only that emergency relief remained unresolved, but that the later application rested on a materially developed factual and procedural posture while the alleged constitutional injury and preservation risks continued to compound. As the period of inaction continued, the

practical efficacy of interim relief progressively diminished: the conditions Voss sought to preserve were lost, evidence became increasingly vulnerable to loss or alteration, and the opportunity for prospective injunctive relief to prevent continuing constitutional injury narrowed as the alleged harms continued to accrue. The passage of time therefore altered the remedial posture itself, progressively converting relief initially sought to preserve the status quo into relief requiring restoration after that status quo had been lost. With the emergency matters still unresolved, Voss escalated her efforts to obtain action through the mechanisms available within the federal judiciary. She submitted a judicial-conduct complaint to the Ninth Circuit and separately sought extraordinary relief by petition for a writ of mandamus directed to the district court's continued inaction on the pending matters. Voss also filed a copy of the mandamus petition in the Eastern District, thereby placing the district court record itself on notice that appellate relief had been sought concerning the continued absence of action on the pending emergency matters.

Only thereafter, on August 24, 2026, did substantive proceedings resume in the district court. In a single order, the magistrate judge dismissed the SAC, denied every other then-pending request for interim or procedural relief, and required Voss to file a Third Amended Complaint within fourteen days. [ECF No. 13].

Against that procedural backdrop, several stated premises of the August 24 order are difficult to reconcile with the docket and SAC the order itself cites:

1. The August 24 ECF-10 order faulted the SAC for lack of prior leave under [Rule 15(a)(2)], even though Voss had already filed [ECF No. 9] expressly seeking that leave. The court then substantively screened and dismissed the SAC and, in the same order, denied the pending motion for leave as moot. That sequence matters because the record does not show disregard of [Rule 15]; it shows compliance with the leave requirement followed by substantive adjudication of the proposed pleading.

2. The August 24 order materially narrowed the function alleged in the SAC. It stated that Defendants' wrongdoing consisted "entirely" of rejecting and delaying filings and then analyzed that conduct as ordinary clerk activity involving filing acceptance and docketing. But the SAC expressly alleged a different and antecedent function: clerk-level "legal eligibility determinations," supervisor-created filing barriers, and withholding or diversion before judicial review, alleged to be administrative, ministerial, or ultra vires. [SAC ¶¶ 65–67]. The pleaded theory therefore was not simply that clerks mishandled filings within an otherwise lawful intake function, but that nonjudicial personnel first made substantive determinations about Voss's legal eligibility to invoke judicial procedures and then used filing mechanisms to enforce those determinations.

3. The August 24 immunity ruling depended on materially redefining the function pleaded in the SAC. Although Voss alleged that nonjudicial personnel made unauthorized, ultra vires legal-eligibility determinations before judicial review and then enforced those determinations through filing controls, the order reduced the alleged conduct to ordinary “rejecting and delaying” or “docketing” activity and, on that narrowed characterization, concluded that Voss had not alleged action in the “clear absence of all jurisdiction.” The SAC, however, had pleaded the substance of that inquiry by alleging that Defendants lacked lawful adjudicative authority to make the eligibility determinations at issue and were acting without any judicial directive authorizing the resulting rejections. Thus, the order’s immunity conclusion followed only after treating the downstream filing mechanism as the challenged function rather than addressing the antecedent substantive function actually alleged.

The order’s “entirely” characterization is difficult to reconcile with the SAC itself. The pleading expressly alleged clerk-level legal-eligibility determinations, supervisor-created filing barriers normally reserved for a judicial officer, and then withholding and diversion before judicial review, and ultra vires conduct outside any protected adjudicative function. [SAC ¶¶ 65–67]. The alleged rejections and delays, effectuated through ancillary administrative mechanisms, were therefore not pleaded as the entirety of the constitutional injury, but as the means by which

independently made, antecedent, identity-based determinations concerning Voss's eligibility to invoke judicial procedures were enforced.

Those antecedent eligibility determinations allegedly foreclosed multiple facially available avenues through which Voss sought to place her individual rights before a judicial officer, including intervention under [Cal. Civ. Proc. Code § 387]; relief under [Cal. Civ. Proc. Code §§ 473(a)(1), 473(b), and 473(d)]; notices of appeal or cross-appeal; Notices of Related Case; and emergency injunctive relief under [Cal. Civ. Proc. Code §§ 526 and 527]. Voss also alleged that the unlawful-detainer action proceeded against Studio on Sutter, LLC even though she was the individual lease signatory and claimed the direct possessory and contractual interest, implicating [Cal. Civ. Proc. Code §§ 367 and 389]. The federal claim did not ask the district court to decide whether Voss would ultimately prevail under those state-law procedures. It alleged that clerk personnel made antecedent, identity-based determinations that she was not eligible to invoke them, thereby preventing the underlying party-status, intervention, postjudgment, appellate, related-case, and emergency issues from reaching the judicial officers authorized to decide them.

The August 24 order resolved the pending emergency posture without granting any interim protection: it denied expedited discovery, electronic-filing access, the request for a ruling, the SAC-related leave motion, the ex parte

application, and the mandamus/preservation request. The order further treated [ECF No. 12] as though Voss had asked the district court itself to issue mandamus, even though the filing was directed to the Ninth Circuit and was docketed below to provide notice of the appellate mandamus request, the continuing emergency, and the preservation issue. The appellate filing expressly identified [ECF No. 12] as evidence of actual notice to the district court and as potentially satisfying [Federal Rule of Appellate Procedure 21(a)(1)]'s requirement that the trial judge receive a copy. The magistrate judge nevertheless purported to deny the mandamus request and simultaneously denied the requested preservation relief.

Nevertheless, Voss complied with the court's directive and timely filed a Third Amended Complaint addressing the immunity rationale articulated in the August 24 order. She filed a Third Amended Complaint on August 26, 2026, directly expanding the functional-immunity allegations and separating ordinary filing administration from the antecedent legal-eligibility determinations she alleged clerk personnel had independently made. [ECF No. 14].

The TAC was subsequently dismissed as well, but not because the magistrate judge rejected its expanded immunity analysis on the merits. The TAC incorporated a detailed memorandum directly challenging, with controlling authority, the immunity cases and functional characterization relied upon in dismissing the SAC. [ECF No. 15] did not resolve that substantive response.

Instead, it dismissed the TAC solely under [Rule 8] because the pleading spanned 121 pages and directed Voss to file a complete amended complaint limited to twenty pages. Thus, the materially expanded function-by-function immunity challenge was never substantively adjudicated before Voss was required to compress the operative pleading yet again in an active, ongoing and growing state of repeated alleged constitutional injury.

Voss again complied. On September 3, 2026, she filed the court-ordered twenty-page Fourth Amended Complaint ("FAC"), accompanied by a separate memorandum of points and authorities preserving the fuller legal and functional-immunity analysis and an exhibit list. [ECF No. 16]. On September 8, she renewed her request for emergency relief through an ex parte [Rule 65] motion seeking a temporary restraining order and an order to show cause regarding a preliminary injunction, supported by a memorandum, declarations, proposed order, incorporated record materials, and the court's TRO checklist. [ECF No. 17]. That same day, Voss filed her consent/decline forms concerning magistrate-judge jurisdiction. [ECF Nos. 18–19].

The FAC pleaded a concrete distinction between neutral clerical processing and the challenged antecedent adjudicative function. In February 2026, the Clerk's Office identified objective processing defects involving filing fees and LLC fee-waiver eligibility; once corrected, the filing was accepted and docketed. [ECF No.

16 at 4–5]. Beginning in April, however, the FAC alleged that clerk personnel first made substantive determinations concerning Voss's individual filing capacity, party status, representation requirements, appellate eligibility, and access to emergency procedures, and then enforced those determinations through rejection, delay, withholding, supervisor review, or refusal to route filings to a judicial officer. [ECF No. 16 ¶¶ 10–18].

The FAC did not allege entitlement to prevail on the underlying remedies; it alleged entitlement to invoke facially available judicial procedures—including intervention under [Cal. Civ. Proc. Code § 387], relief under [Cal. Civ. Proc. Code §§ 473(b) and 473(d)], writ and preservation relief, and emergency relief under [Cal. Civ. Proc. Code §§ 526–527]—and have a judicial officer decide them. [ECF No. 16 ¶¶ 32–35, 70–71]. On June 22–23, Voss identified herself as a proposed intervenor and property claimant, yet the package was rejected because clerk personnel determined that she was "not a party," effectively using nonparty status to foreclose the very [§ 387] procedure through which a nonparty seeks party status. April 22 supplied the functional comparator: after similar intervention papers had been rejected days earlier, the renewed application finally reached a judge, who denied intervention as untimely, crossed out a proposed finding that Voss lacked a separate personal interest, and imposed no prospective filing bar. [ECF No. 16 ¶¶ 14–18].

The FAC alleged that the same pattern continued across appellate filings, emergency-routing requests, postjudgment submissions, and renewed August filings. [ECF No. 16 ¶¶ 19–53]. At screening, the question was not whether those allegations were proved, but whether they plausibly described something more than routine "docketing." The FAC alleged that they did: the constitutional injury was the assumption by nonjudicial personnel of antecedent substantive authority to determine Voss's eligibility to invoke judicial process, followed by use of clerical mechanisms to enforce those determinations. At the filing time of the FAC, Voss had also been notified that the status quo is officially and permanently unavailable to her as a form of potential relief.

Three days later after the FAC was filed, the magistrate judge issued Findings and Recommendations resting on material legal, procedural, and record-based errors, and recommended dismissal of the FAC without further leave to amend, denial of the renewed [Rule 65] motion, and closure of the action. [ECF No. 21].

Voss timely responded on September 14 with thirteen specific, record-cited [Rule 72] objections identifying asserted factual, legal, functional, and procedural errors in the Findings and Recommendations, together with a motion seeking expedited district-judge and de novo review and a separate motion under [28

U.S.C. § 455(a)] seeking disqualification of Magistrate Judge Peterson and reassignment.

Four days later, the district court adopted the Findings and Recommendations after stating that it “presumes that any findings of fact are correct,” while acknowledging that the magistrate judge’s conclusions of law were subject to de novo review. [ECF No. 25 at 2]. The court then summarily concluded that the magistrate judge had “correctly applied the legal standards,” that Defendants were entitled to judicial immunity, and that further amendment would therefore be futile, without separately addressing the thirteen specific factual, functional, procedural, and legal objections Voss had presented. Having treated immunity as dispositive, the court dismissed the FAC without leave to amend, denied the renewed [Rule 65] motion, and denied the pending motions for expedited de novo review and [§ 455(a)] disqualification as moot.

The action was thus terminated entirely at the immunity threshold. After stating that it “presumes that any findings of fact are correct,” the district court accepted the F&R’s factual and functional characterization of the clerk conduct, concluded that quasi-judicial immunity applied, and treated that conclusion as dispositive of the case. From that threshold determination flowed everything else: dismissal of the FAC without further leave to amend, denial of renewed [Rule 65] relief, and denial as moot of the expedited-review and [§ 455(a)] motions. In

practical effect, once the F&R's immunity premise was accepted, no remaining issue—including the thirteen specific [Rule 72] objections challenging that premise, the continuing emergency, preservation concerns, or the independently raised recusal question—received separate merits adjudication before judgment and closure.

**B. Findings and Recommendations, Specific Objections, and Final Order**

On September 11, 2026, the magistrate judge issued Findings and Recommendations recommending dismissal of the Fourth Amended Complaint without further leave to amend, denial of Voss's renewed **[Rule 65]** application, and closure of the action. **[ECF No. 21].** The F&R characterized the challenged conduct as "decisions regarding the docketing of filings," concluded that the clerk defendants were protected by absolute quasi-judicial immunity, and treated that threshold immunity determination as dispositive of the action. **[*Id.* at 4–6].**

On **September 14**, Voss timely filed detailed objections under **[Federal Rule of Civil Procedure 72]** and expressly requested **de novo district-judge determination** of the disputed factual, functional, mixed, and legal premises underlying the recommendation. **[ECF No. 22].** The objections identified **thirteen separately numbered errors**, including use of a superseded caption and reliance on superseded pleadings; characterization of alleged substantive legal-status determinations as ordinary docketing; application of a "clear absence of

jurisdiction" inquiry before determining whether the challenged functions were judicial or quasi-judicial in the first instance; treatment of ***[Mullis]*** without the function-specific limitations Voss argued followed from ***[Antoine]***, ***[Castillo]***, and related authority; reliance on allegedly inapplicable local procedures; failure to separately analyze Alleyne's alleged supervisory and policy-making role; failure to separately address prospective official-capacity relief; failure to analyze the three pleaded constitutional claims on their elements; mischaracterization of the amendment history and futility inquiry; and derivative denial of **[Rule 65]** relief. **[ECF No. 22 at 2–15].**

The objections were therefore not limited to disagreement with an ultimate legal conclusion. They specifically disputed the F&R's factual and functional characterization of what Defendants allegedly did—whether the conduct was ordinary clerical docketing or antecedent substantive adjudication of Voss's legal status and eligibility to invoke lawful judicial procedures available to her. They also challenged the identity and capacities of the operative defendants, the pleading actually under review, the asserted source of clerical authority, the scope of immunity, and the treatment of prospective relief and the separately pleaded constitutional claims. **[*Id.*].**

By this stage, Voss alleges that she had remained in an active and worsening emergency since at least **June 26, 2026**, while the consequences of the challenged

conduct continued to compound. **Compounding that harm, prior communications with the magistrate judge's chambers had placed the court on actual notice of the operative pleadings, the continuing emergency, and the need for timely judicial action; Voss was informed that a ruling would issue in time.** Critically, by the time the matter was ultimately addressed, preservation of the former status quo was no longer practically available. The conditions Voss had earlier sought to preserve had already been lost, materially changing the nature of the requested emergency relief from preservation of existing conditions to **restoration, mitigation of continuing injury, and prevention of further irreparable harm**.

Voss also filed a motion under [28 U.S.C. § 455(a)] concerning further participation by the magistrate judge **after the F&R issued and before final judgment** [ECF No. 24], and a separate request for expedited district-judge review of the objections to the published F&R because the challenged immunity characterization controlled both dismissal and the pending emergency-relief request. **[ECF No. 23].**

The district court's adoption order was filed September 18, 2026. **[ECF No. 25].** The order retained a caption naming the **"Superior Court of California, County of Sacramento"** as the defendant, although the operative FAC named **Hassan H. Alleyne and Does 1–25**. **[*Id.* at 1; compare ECF No. 16 at 1].** The

district court addressed the objection concerning Alleyne by concluding that the magistrate judge's immunity analysis nevertheless applied to him as the "operations manager/court supervisor." **[ECF No. 25 at 1–2].** It then stated that the magistrate judge had "correctly applied the legal standards," that the "named defendants are entitled to judicial immunity," and that further amendment would therefore be futile. **[*Id.* at 2].**

The order then stated the standard it applied to review of the recommendation: "The court *presumes* that any findings of fact are correct. See ***[Orand v. United States, 602 F.2d 207, 208 (9th Cir. 1979)]***. The magistrate judge's conclusions of law are reviewed de novo." **[ECF No. 25 at 2].**

The court thereafter stated that it had reviewed the file and found the F&R supported by the record and proper analysis. It adopted the F&R, dismissed the FAC without leave to amend, denied the renewed **[Rule 65]** motion, denied **[ECF Nos. 23 and 24]** as moot, directed the Clerk to close the action, and entered final judgment. **[*Id.* at 2; ECF No. 26].**

### C. Emergency, Preservation, and Post-Judgment Proceedings

Voss sought preservation and expedition well before the renewed **[Rule 65]** application: limited expedited discovery, **[ECF No. 5]**; emergency filing-access, preservation, shortened time, advancement, and discovery relief, **[ECF No. 11]**; and interim preservation while those matters remained pending, **[ECF No. 12]**.

Those requests were denied with dismissal of the Second Amended Complaint on August 24, 2026. **[ECF No. 13].**

After filing the FAC, Voss renewed emergency relief in **[ECF No. 17]**, seeking cessation of alleged person-specific filing barriers and clerk-level substantive gatekeeping; neutral ministerial processing; preservation of audit logs, rejection histories, routing metadata, flags, supervisory communications, and related records; expedited discovery and proceedings; and advancement or consolidation under **[Rule 65(a)(2)].** She also sought mandatory financial and operational restoration to prevent further business extinction. She characterized this request as prospective restorative relief for replacement infrastructure, equipment, outfitting, and immediate brand repair—rather than completed compensatory damages. This relief is subject to the stringent findings required for a mandatory preliminary injunction under **[Rule 65].** Mandatory preliminary relief is subject to heightened scrutiny. ***[Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009)].*** A supported threat of business extinction can establish irreparable harm, even when damages may otherwise be available. ***[hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1188–90 (9th Cir. 2022)].*** But evidence of substantial past and projected losses, standing alone, does not establish impending extinction. ***[American Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985)].*** Voss sought

consideration of her declarations and supporting records under those standards. She contends that the alleged constitutional injury had already destroyed the former operating conditions, displaced the remaining business enterprises from the location at which they had previously been domiciled, and left those operations without a stable physical base from which to continue. Coupled with the alleged threat of further collapse of the remaining business structure, those circumstances warranted consideration of specifically supported restorative measures directed at preventing further extinction and mitigating continuing irreparable harm.

The emergency posture cannot be separated from the procedural course of the case. Voss alleged continuing constitutional injury, progressive destruction of the business structure, loss of the preexisting status quo, and a concrete risk that electronically maintained evidence uniquely within Defendants' control would be overwritten or lost. The requested restorative measures were directed at arresting that continuing deterioration and preserving the possibility of effective relief; they did not independently establish entitlement to replacement funding or damages. Yet the district court never reached those requests on a developed evidentiary record. The June emergency application remained unresolved for approximately fifty-five days, despite chambers confirming on July 2 and again on August 10 that the filings had been received and remained pending, while Voss continued to identify the preservation urgency. When the court finally acted on August 24, it

denied expedited discovery, preservation relief, electronic-filing access, and the pending ex parte relief while requiring another amendment. No evidentiary hearing was held and no interim preservation measure issued.

**That course produced concrete procedural prejudice.** As time passed without interim relief, the relief originally sought to preserve existing conditions became progressively less capable of doing so; the status quo deteriorated, the risk of evidentiary loss increased, and the remedial posture shifted from preservation toward mandatory restoration. At the same time, the case remained at screening, preventing service, **[Rule 26(f)]** proceedings, merits discovery, or identification of the Doe Defendants. Voss therefore had no means to obtain the internal audit trails, transaction histories, supervisor-routing data, person-specific flags, or communications she alleged were necessary both to identify the responsible actors and to establish the particular functions they performed. The absence of discovery thus became self-reinforcing: immunity was decided before the evidence bearing directly on the functional-immunity inquiry could be obtained, and the immunity ruling was then used to foreclose the proceedings through which that evidence could have been developed.

The prejudice compounded after the August 24 order. The TAC materially expanded the function-by-function immunity analysis but was dismissed solely under **[Rule 8]**, with Voss ordered to compress the entire operative pleading into

twenty pages. **[ECF No. 15].** Voss complied, filed the twenty-page FAC with a separate memorandum, and renewed **[Rule 65]** relief. **[ECF Nos. 16–17].** The magistrate judge nevertheless recommended dismissal without further leave to amend and denial of the renewed injunction request before service or discovery. **[ECF No. 21].** The district judge then adopted that recommendation after stating that factual findings were presumed correct, concluded that immunity was dispositive, dismissed the FAC without leave to amend, denied **[Rule 65]** relief, and disposed of the expedited-review and **[§ 455(a)]** motions as moot. **[ECF No. 25]. Thus, once the threshold immunity premise was accepted, the remaining emergency, preservation, recusal, and evidentiary issues effectively fell with it rather than receiving independent adjudication.**

The result was not merely dismissal at an early stage; it was foreclosure of the mechanisms by which Voss sought to preserve evidence, develop the factual record, identify the responsible actors, and maintain the possibility of effective prospective relief. No evidentiary hearing occurred, no merits discovery occurred, and no preservation order issued before judgment. Three days after judgment, Voss again sought narrowly tailored preservation relief under **[Rule 62(d)], [ECF No. 27]**, specifically seeking preservation of electronic and administrative records concerning her attempted filings and internal court communications pending appeal. That motion identified live audit logs, transaction histories, user flags, and

supervisor-routing notes as evidence subject to ordinary overwrite or deletion cycles—records going directly to the factual question the immunity analysis had resolved without discovery. The cumulative prejudice therefore lies in the interaction of delay, denial of interim protection, screening-stage dismissal, and foreclosure of evidentiary development: the longer the threshold issue remained dispositive, the more difficult it became to preserve the evidence and conditions necessary for meaningful merits review and effective appellate relief.

After judgment, she filed **[ECF No. 27]** under **[Rule 62(d)]**, again seeking preservation of those electronic and administrative records pending appeal.

*A separate* Ninth Circuit mandamus proceeding, **[No. 26-5441]**, arose **after this federal action had already been filed and while emergency preservation and related matters remained pending without disposition in the district court**. The petition did not ask the Ninth Circuit to adjudicate the merits of Voss's **[§ 1983]** claims or the underlying state proceedings. It principally sought an order requiring the district court to **act on the pending emergency matters**, particularly preservation relief, before allegedly time-sensitive electronic evidence could be lost.

While that petition was pending, the magistrate judge issued the August 24, 2026 order dismissing the Second Amended Complaint and disposing of the pending motions. **[ECF No. 13].** The Ninth Circuit denied mandamus the

following day because Voss had not established the extraordinary "clear and indisputable right" required for that writ. **[No. 26-5441].** No. 26-5441 was therefore a request to compel district-court action during an ongoing case, not an appeal from a final judgment.

**This appeal is procedurally and substantively different.** It arises from the September 18 final judgment under **[28 U.S.C. § 1291]** and seeks ordinary appellate review of what the district court ultimately did: the screening dismissal, function-specific immunity analysis, de novo-review procedure, denial of leave to amend, and derivative denial of **[Rule 65]** and preservation relief. It does not seek review of the state unlawful-detainer merits.

## V. SUMMARY OF ARGUMENT

First, the district court's stated review standard conflicts with **[28 U.S.C. § 636(b)(1)(C)]** and **[Rule 72(b)(3)]** as applied to specifically objected portions of a dispositive recommendation. Voss did not make only generalized legal objections. She specifically disputed the F&R's factual and functional characterization of the challenged acts, the operative defendants and capacities, the source and applicability of local rules, the existence and scope of judicial orders, the amendment history, and the continuing nature of the alleged condition. Her objections expressly challenged the F&R's reading of ***[Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385 (9th Cir. 1987)]***, and its failure to apply the later function-

specific limitations recognized in ***[Forrester]***, ***[Antoine]***, ***[Castillo]***, and ***[Phillips]***. Yet the adoption order stated that findings of fact were "presume[d]" correct and separately reserved de novo review for conclusions of law. **[ECF No. 25 at 2].** ***[Orand]***, ***[Remsing]***, and the statutory text require a de novo determination of the portions actually challenged, including material factual and mixed premises.

Second, ***[Mullis]*** does not establish categorical immunity merely because an antecedent substantive decision reserved for a judicial officer was ultimately enforced through the mechanical acceptance or rejection of a filing. ***[Mullis]*** held that bankruptcy clerks were immune for the particular acts alleged there—accepting and filing an incomplete bankruptcy petition, failing to provide certain filing information, and later refusing an amended petition—because those acts were treated as integral filing functions within the general subject-matter authority of the bankruptcy clerk's office. ***[Mullis, 828 F.2d at 1390].*** But ***[Mullis]*** was decided in 1987. The Supreme Court subsequently rejected an approach under which nonjudicial personnel receive absolute immunity merely because they are "part of the judicial function." ***[Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435–36 (1993)].*** As the en banc Ninth Circuit explained in ***[Phillips]***, ***[Antoine]*** worked a "sea change" in the analysis of absolute quasi-judicial immunity for nonjudicial officers. The court must identify and examine the particular function actually challenged, and absolute immunity is to be extended no further than its

functional justification warrants. ***[Phillips v. Goldman (In re Gilman), No. 24-2249, slip op. at 14–16 (9th Cir. May 7, 2026) (en banc)].***

***[Mullis]*** therefore protects qualifying clerical filing functions; it does not eliminate the antecedent inquiry into **what function the defendant actually performed**. The question is not whether clerks sometimes possess authority to reject documents—they plainly do. Nor is the question whether filing and docket management can be integral to the judicial process—they can. The question at screening was whether the particular conduct alleged in the FAC was ordinary filing administration of the kind addressed in ***[Mullis]***, or whether clerk personnel **first** exercised an allegedly unauthorized adjudicatory function by determining Voss's legal status and substantive eligibility to invoke judicial procedures, and **only then** used ministerial filing authority to enforce those independently made determinations.

If absolute quasi-judicial immunity extends to that alleged sequence, the functional boundary between judicial adjudication and ministerial court administration effectively disappears. Nonjudicial personnel could decide substantive legal questions reserved to judicial officers, enforce those decisions through filing controls, and then obtain absolute immunity by characterizing the enforcement mechanism as "docketing." **That would not preserve the distinction between judicial and clerical functions; it would collapse it, permitting**

**ministerial employees to exercise de facto adjudicatory authority without the judicial office, lawful delegation, or judicial review that makes such authority judicial in the first place.**

Third, ***[Phillips]***, read together with ***[Antoine]***, ***[Castillo]***, and the properly limited rule of ***[Mullis]***, supplies the controlling methodology. ***[Phillips]*** reiterated that courts "must examine the particular function . . . at issue," and that quasi-judicial immunity attaches to functions analogous to authoritative adjudication, not simply because an actor operates within the judicial system. **[*Slip op.* at 16].** The F&R instead began with the high-level label "docketing of filings" and reasoned from the existence of *some clerk authority to reject unacceptable documents* to immunity for the challenged conduct. But authority to reject a technically unacceptable filing **does not** itself establish authority to decide whether an individual may invoke intervention under **[Cal. Civ. Proc. Code § 387]**, whether she possesses party status for appellate purposes, whether an attorney-substitution order concerning an LLC disables her individual filings, or whether an emergency application may reach a judge only after clerk-supervisor merits screening.

Fourth, accepting the verified FAC's allegations as true, the challenged functions were not pleaded as neutral processing. The FAC expressly concedes ordinary technical intake authority and alleges that clerks identified and permitted correction of technical defects at other times. Restated, the fact pattern is this:

**1. Voss attempts to invoke a legally available judicial procedure →**

**2. Alleyne allegedly exercises an antecedent substantive judicial-type function by determining Voss's legal eligibility to invoke that procedure →**

**3. Alleyne then uses or directs ancillary administrative mechanisms to enforce that determination through rejection, withholding, delay, or refusal to route the filing to a judge.**

***[Mullis]*** addresses the ancillary administrative mechanism of that sequence. It does not immunize the antecedent step merely because the resulting legal determination was ultimately enforced through a filing rejection. The conduct challenged here was instead the alleged antecedent determination that Voss was legally ineligible to seek intervention because she was not already a party; could not pursue appellate review of the intervention ruling because she was "not a party"; was personally disabled by an attorney-substitution issue involving the LLC; and could not obtain emergency routing unless a supervisor found a qualifying "health and safety" issue supported by a police report. **[ECF No. 16 ¶¶ 10–48].** Those allegations may ultimately be proven or disproven, but at screening they cannot be recharacterized as the same function involved in ***[Mullis]*** merely because the resulting decisions were implemented through an electronic rejection, filing hold, or intake instruction.

Fifth, the operative complaint required separate analysis that the F&R did not provide. The FAC names Alleyne and Does—not the Superior Court—alleges individual and official capacities separately, seeks prospective relief from an allegedly ongoing practice, and pleads three constitutional claims. **[ECF No. 16 ¶¶ 7–9, 49–79]. [28 U.S.C. § 1915(e)(2)(B)(iii)]** specifically addresses claims seeking monetary relief against an immune defendant. Even if ***[Mullis]*** or other immunity authority ultimately protects particular functions from damages, that does not dispense with identifying the precise protected function, determining which defendant and capacity is implicated, and separately analyzing the availability of prospective relief under the governing **[§ 1983]** and equitable framework.

Sixth, dismissal without leave to amend was not supported by a futility analysis directed to the actual FAC. The amendment sequence was not repeated failure to cure the same merits defect. The SAC was dismissed on immunity grounds; Voss responded with a materially expanded TAC addressing that ruling; the TAC was then dismissed solely for excessive length under **[Rule 8]**; the court ordered a twenty-page condensation; and the condensed FAC was thereafter dismissed on immunity grounds without further leave. **[ECF No. 22 at 12–13].** ***[Lopez]***, ***[Rosati]***, ***[Swoben]***, and ***[Eminence Capital]*** require more before a pro se civil-rights action is terminated without leave.

Finally, the **[Rule 65]** denial and closure were derivative of the threshold immunity ruling. If that ruling is vacated, the emergency and preservation requests should be reconsidered under the proper merits framework, and the Doe-identification and preservation problem should not become self-fulfilling merely because the case was screened out before service or discovery. Likewise, if the case is remanded, the unresolved **[§ 455(a)]** issue should be addressed before renewed magistrate-judge participation rather than remaining moot solely because judgment was entered contemporaneously with its denial.

## VI. STANDARDS OF REVIEW

A dismissal under **[28 U.S.C. § 1915(e)(2)(B)(ii)]** for failure to state a claim is reviewed **de novo** under the same basic standard governing dismissal under **[Federal Rule of Civil Procedure 12(b)(6)].** ***[Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012)].*** The Court accepts the operative complaint's well-pleaded factual allegations as true, construes them in the light most favorable to the plaintiff, and construes a pro se pleading liberally. ***[Hebbe v. Pliler, 627 F.3d 338, 341–42 (9th Cir. 2010)].***

Dismissal on the basis of **absolute immunity** is likewise reviewed de novo. ***[Garmon v. County of Los Angeles, 828 F.3d 837, 842 (9th Cir. 2016)].*** In conducting that review, the Court accepts the operative complaint's factual allegations as true and construes them in the plaintiff's favor. **[*Id.*]** Whether

the particular function alleged is entitled to absolute quasi-judicial immunity therefore presents a legal question reviewed de novo. The Ninth Circuit's en banc decision in ***[Phillips v. Goldman (In re Gilman)]*** confirms that the immunity inquiry turns on the **"particular function"** actually challenged, rather than the official's title or the general judicial setting in which the conduct occurred. ***[No. 24-2249, slip op. at 14–16 (9th Cir. May 7, 2026) (en banc)].***

The district court's compliance with **[28 U.S.C. § 636(b)(1)(C)]** and **[Rule 72(b)(3)]** presents a related standard-of-review issue. A district court's determination concerning the scope of review of a magistrate judge's ruling is reviewed for **abuse of discretion**. ***[Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002)].*** But a court necessarily abuses that discretion when it applies the wrong legal standard, and **[§ 636(b)(1)(C)]** requires a district judge to make a **de novo determination** of those portions of a dispositive recommendation to which specific objection is made. ***[United States v. Remsing, 874 F.2d 614, 617–19 (9th Cir. 1989)]; [Orand v. United States, 602 F.2d 207, 208–09 (9th Cir. 1979)].*** In ***[CPC Patent Technologies Pty Ltd. v. Apple Inc., 34 F.4th 801, 807–10 (9th Cir. 2022)]***, the Ninth Circuit vacated where the district court applied clear-error rather than de novo review to a dispositive matter.

Denial of leave to amend is reviewed for **abuse of discretion**, while whether amendment would be **futile** is reviewed de novo. ***[United States v. United***

***Healthcare Insurance Co., 848 F.3d 1161, 1172 (9th Cir. 2016)]; [Cohen v. ConAgra Brands, Inc., 16 F.4th 1283, 1287 (9th Cir. 2021)]; see also [Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc)].*** Under ***[United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc)]***, the Court first determines de novo whether the district court applied the correct legal rule; an exercise of discretion resting on an erroneous legal premise constitutes an abuse of discretion. Here, Voss expressly sought leave under **[Rule 15(a)(2)]** through **[ECF No. 9]**, yet the August 24 order characterized the SAC as improperly filed for want of leave, substantively dismissed it on quasi-judicial-immunity grounds, and then denied the pending leave motion as moot. Accordingly, the ultimate **[Rule 15]** disposition is reviewed for abuse of discretion, while the immunity-based futility premise underlying that disposition is reviewed de novo. If that premise rested on an erroneous characterization of the function pleaded in the SAC, the resulting denial of leave necessarily rested on legal error and constituted an abuse of discretion. The Ninth Circuit expressly recognizes this division between abuse-of-discretion review of the denial itself and de novo review of futility.

A preliminary-injunction ruling is reviewed for abuse of discretion, while underlying legal conclusions are reviewed de novo and factual findings for clear error. ***[Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017)].*** Where, as here, the renewed **[Rule 65]** request was denied because the court first concluded that no

legally cognizable claim existed, the dispositive legal premise underlying that denial is reviewed de novo.

A ruling under **[28 U.S.C. § 455(a)]** is ordinarily reviewed for **abuse of discretion**. ***[United States v. Holland, 519 F.3d 909, 913–14 (9th Cir. 2008)].*** Here, however, the district court did not adjudicate the merits of Voss's **[§ 455(a)]** motion; it denied that motion as moot when it simultaneously adopted the F&R and terminated the action. To the extent that disposition rested on the legal conclusion that the recusal issue had become moot, that legal determination is reviewed **de novo**. See ***[Bishop Paiute Tribe v. Inyo County, 863 F.3d 1144, 1151 (9th Cir. 2017)].*** Any ultimate merits determination under **[§ 455(a)]**, by contrast, would ordinarily be reviewed for abuse of discretion.

## VII. ARGUMENT

### A. Critical Legal Background: Screening and Absolute Immunity

At screening, no Defendant had appeared and no discovery had occurred. The verified pro se Fourth Amended Complaint (FAC) therefore had to be construed liberally, with well-pleaded facts accepted as true. The question was whether those allegations stated a plausible claim not barred by immunity on the face of the complaint.

Absolute immunity turns on function, not title. ***[Forrester]***, ***[Antoine]***, ***[Castillo]***, and most recently en banc ***[Phillips]*** require examination of the

**particular function actually challenged**. ***[Phillips]*** emphasized that ***[Antoine]*** worked a "sea change" in immunity analysis for nonjudicial officers and rejected immunity based merely on an actor's connection to the judicial process.

That matters here because the FAC alleged a sequence of distinct functions and conduct after Appellant would attempt to invoke a perfectly legal, and allowable judicial procedure:

**Function One:** Alleyne allegedly exercises an antecedent substantive judicial-type function by determining Voss's legal eligibility to invoke that procedure (challenged conduct).

**Function Two:** Alleyne then uses or directs ancillary administrative mechanisms to enforce that determination through rejection, withholding, delay, or refusal to route the filing to a judge. (non-challenged conduct).

***[Mullis]*** recognized immunity for clerks' acceptance and rejection of filings as functions integral to the judicial process, notwithstanding alleged error or acts exceeding their authority. ***[828 F.2d at 1390].*** Voss challenges the alleged creation **and enforcement** of a continuing, identity-based restriction that foreclosed intervention, appellate, and emergency procedures—not merely an erroneous rejection of a particular document. The FAC alleges that Defendants independently supplied substantive eligibility restrictions and used filing intake and supervisory controls to prevent judicial consideration. **[ECF No. 16 ¶¶ 2, 4, 7, 10–48].** Voss

contends that those allegations required examination of the restriction's source, scope, and function before the entire course of conduct could be classified as protected docket administration. Separating a decision from its enforcement chronologically does not itself defeat immunity; the asserted distinction is functional. **The challenged function encompasses both establishing the alleged identity-based filing restriction and using clerical authority to maintain it.** The district court's reliance on the resulting filing rejections did not, Voss submits, adequately address that pleaded distinction.

The FAC clearly alleged something different than mechanical clerical rejection: it alleges antecedent substantive determinations made **before** any potentially protected clerical act, including determinations concerning intervention, individual filing capacity, appellate eligibility, attorney-substitution consequences, and emergency-routing entitlement. **[ECF No. 16 ¶¶ 10–48].** It expressly distinguished those alleged substantive determinations from ordinary technical intake authority.

In short, the question was not whether pressing "reject" can be a protected clerical act. It is what Alleyne allegedly decided before pressing "reject", and if that transformation into a judicial role and making that determination is considered protected activity.

### B. The Adoption Order Used a Review Standard Incompatible with § 636(b)(1)(C) for Specifically Objected-To Portions

The question is whether the district judge made the de novo determination required by **[28 U.S.C. § 636(b)(1)(C)]** of the portions of the F&R Voss specifically challenged—not merely whether the court considered her objections or reviewed abstract legal conclusions de novo. **[28 U.S.C. § 636(b)(1)(C)]** and **[Rule 72(b)(3)]** require de novo determination of **"those portions"** or **"any part"** properly objected to; contested factual and mixed premises cannot simply be presumed correct.

Voss specifically challenged the F&R's operative-party and pleading analysis, characterization of the alleged function as routine "docketing," reliance on local rules—including a juvenile e-filing rule—and treatment of the April 22 and May 12 orders, August evidence, and amendment history. **[ECF No. 22 at 2–15].** Most importantly, she disputed whether Alleyne could first make substantive determinations concerning party status, intervention, appellate eligibility, attorney-substitution consequences, or emergency entitlement and then deem the filing "unacceptable." That **antecedent function** was specifically contested.

The adoption order nevertheless stated that "[t]he court presumes that any findings of fact are correct," while separately reviewing legal conclusions de novo. **[ECF No. 25 at 2].** But ***[Orand v. United States, 602 F.2d 207, 208–09 (9th Cir. 1979)]*** permits that presumption for **uncontested** findings; objected-to portions

require de novo determination. ***[Remsing v. United States, 874 F.2d 614, 617–19 (9th Cir. 1989)].*** And ***[CPC Patent Technologies Pty Ltd. v. Apple Inc., 34 F.4th 801, 807–10 & n.4 (9th Cir. 2022)]*** declined to presume that de novo review occurred where the written order affirmatively applied a deferential standard.

That error mattered. The FAC alleges that the filings were not "unacceptable" because of neutral technical defects; they became "unacceptable" only after Alleyne allegedly exercised a **judicial-type function by determining that Voss herself was legally ineligible to file them. [ECF No. 16 ¶¶ 10–48].** The district judge therefore had to independently determine the specifically disputed functional premise—**neutral clerical processing or antecedent substantive eligibility adjudication**—rather than presume the F&R's "docketing" characterization correct.

A district judge need not answer every objection point-by-point. But where the written order announces a presumption of correctness as to findings specifically challenged, and that disputed characterization controls immunity, futility, **[Rule 65]** relief, and closure of the action, the error is consequential. The judgment should be vacated and remanded for the de novo determination required by **[28 U.S.C. § 636(b)(1)(C)]** and **[Rule 72(b)(3)].**

.

### C. Phillips Requires Identification of the Particular Function Before Absolute Quasi-Judicial Immunity Can Be Applied

The central immunity error was one of functional classification. The F&R acknowledged allegations that Voss was deemed "not eligible to file," "not a party," and barred by attorney-status issues, yet recast the challenged function as protected "docketing." **[ECF No. 22 at 2–6].** Voss objected that the FAC alleged a different sequence: **substantive, judicial eligibility determination first, clerical enforcement second.**

Under ***[Phillips]***, the court must identify the **"particular function"** first and only then determine whether absolute immunity attaches. ***[No. 24-2249, slip op. at 14–17 (9th Cir. May 7, 2026) (en banc)]. [Phillips]*** reaffirmed that ***[Antoine]*** changed the analysis for nonjudicial officers: connection to a judicial proceeding is insufficient; the function itself must justify absolute protection. Under ***[Phillips]***, the court must identify the **"particular function"** before deciding whether absolute immunity attaches. ***[No. 24-2249, slip op. at 14–17 (9th Cir. May 7, 2026) (en banc)].*** Reaffirming ***[Antoine]***, ***[Phillips]*** makes clear that a nonjudicial officer's connection to the judicial process is insufficient; **the function itself must qualify for absolute protection.**

***[Mullis]*** therefore does not transform an antecedent substantive legal determination into protected "docketing" merely because that determination is later enforced through rejection. Nor does authority to reject documents "deemed

unacceptable for filing" authorize a clerk to decide **who is legally entitled to invoke a judicial procedure.** California authorities distinguish technical filing review from judicial decision-making. ***[Voit v. Superior Court, 201 Cal.App.4th 1285, 1287–88 (2011)]*** held that "[w]hether [a] motion has legal merit is a determination to be made by a judge, not the clerk's office," and recognized the clerk's ministerial duty to file conforming papers. See also ***[Rojas v. Cutsforth, 67 Cal.App.4th 774, 777–78 (1998)]; [Carlson v. Department of Fish & Game, 68 Cal.App.4th 1268, 1276–82 (1998)]; [United Farm Workers, 37 Cal.3d 912, 918 (1985)].***

The Sacramento rule concerning filings "determined to be unacceptable" likewise addresses rejection, notice of the defect, correction, and resubmission. It does not purport to authorize clerk personnel to adjudicate party status, intervention eligibility, appellate eligibility, attorney-substitution consequences, or entitlement to emergency judicial review. ***[Acres Bonusing]*** is materially different for the same reason: the challenged rejection there was tied to noncompliance with an identified court rule, not an independently created substantive determination about the filer's legal eligibility. ***[17 F.4th 901, 916 (9th Cir. 2021)].***

Here, the FAC alleges the line ***[Voit]*** identifies was crossed: **Alleyne allegedly supplied the substantive reason that made the filings "unacceptable" by first determining that Voss herself was legally ineligible to file them. [ECF**

**No. 16 ¶¶ 2–8, 10–53].** "Unacceptable" cannot operate as a blank check allowing a clerk to make the legal determination that creates the supposed defect and then invoke clerical rejection authority to immunize that determination.

The F&R nevertheless moved directly to "clear absence of jurisdiction" without first deciding whether the particular function challenged qualified for absolute immunity at all. **That framework did not originate with the SAC.** In **[ECF No. 10]**, Voss alleged that the challenged conduct was not a judicial act, not a judicial decision, and not the faithful execution of any specific facially valid judicial order; rather, she challenged clerk-level legal-eligibility determinations, supervisor-created filing barriers, withholding or diversion before judicial review, and conduct alleged to be administrative, ministerial, or ultra vires. **[ECF No. 10 ¶¶ 65–68].** The SAC did not invoke ***[Stump]***'s "clear absence of all jurisdiction" formulation as the governing threshold test. The magistrate judge introduced that formulation in the August 24 order, **[ECF No. 13]**, after first recharacterizing the alleged wrongdoing as consisting "entirely" of rejecting and delaying filings and treating that conduct as ordinary "docketing"; the order then faulted Voss for not alleging that Defendants acted in the "clear absence of all jurisdiction." **[ECF No. 13 at 4].** The F&R later repeated the same sequence, citing ***[Stump]*** and proceeding directly to the jurisdictional exception after characterizing the challenged conduct as docketing. **[ECF No. 21 at 3–4].**

Voss's later use of that terminology was responsive to the standard the court had imposed; it was not a concession that ***[Stump]*** displaced the antecedent functional inquiry required by ***[Antoine]*** and ***[Phillips]***. The proper sequence remains: identify the particular function first; determine whether absolute immunity attaches second; only then, if immunity attaches, consider the limits of that immunity. By collapsing the alleged antecedent legal determination and its clerical enforcement into the single label "docketing," and proceeding directly to ***[Stump]***'s jurisdictional exception, the court assumed the threshold proposition that ***[Phillips]*** requires it to decide. The dismissal should be vacated.

Only *after* identifying that function and determining that it was functionally comparable to protected adjudication could the court proceed to the separate question whether Defendants nevertheless acted outside the permissible jurisdictional bounds of that protected function. The F&R *reversed* that order of analysis: it labeled the downstream enforcement mechanism "docketing," assumed immunity attached to that generalized category of clerk activity, and then asked only whether Defendants acted in the "clear absence of all jurisdiction." That approach effectively allowed the clerical means used to implement the alleged substantive determination to redefine the function being challenged.

Accordingly, the "clear absence of jurisdiction" inquiry could not cure the threshold analytical error. Because the district court never first determined whether

the particular antecedent function alleged was one to which absolute quasi-judicial immunity attached under ***[Antoine]*** and ***[Phillips]***, its subsequent reliance on ***[Stump]*** began at the second step and assumed the answer to the first. The resulting immunity dismissal rested on a function materially different from the one pleaded and should be vacated.

**D. The FAC Pleads Substantive Eligibility Gatekeeping, Not Neutral Docketing, and Immunity Is Not Established on the Face of the Pleading**

The FAC distinguishes technical filing administration from substantive eligibility gatekeeping. Voss does not challenge correction of filing defects; she challenges alleged determinations that she could not file individually, was "not a party," could not pursue appellate procedures, was affected by the LLC's attorney-substitution issue, or could not obtain emergency routing absent supervisor-created criteria. **[ECF No. 16 ¶¶ 10–48].**

The alleged defect was therefore not in the papers themselves, but in the antecedent determination that **Voss was legally ineligible to submit them**; rejection was merely the enforcement mechanism. The federal issue is not whether Voss was ultimately entitled to intervention, appellate relief, vacatur, or emergency relief, but whether nonjudicial personnel were absolutely immune for deciding her eligibility before a judge could do so. Under ***[Phillips]***, that function-specific question could not be resolved at screening by relabeling the conduct "docketing."

**E. The Operative Defendants, Capacities, Prospective Relief, and Three Constitutional Claims Required Separate Screening**

The FAC names **Alleyne and Does 1–25**, not the Superior Court, and separates individual-capacity damages from official-capacity prospective relief. **[FAC ¶¶ 1–8, 17–74; Prayer ¶¶ 75–86].** Voss specifically objected that the operative defendants, capacities, and claims had to be screened as pleaded, yet the F&R and adoption order continued to caption the Superior Court. **[ECF No. 25 at 1].**

That distinction is substantive. **[28 U.S.C. § 1915(e)(2)(B)(iii)]** addresses **monetary relief against an immune defendant**; it does not itself dispose of separately pleaded prospective relief. ***[Moore v. Urquhart, 899 F.3d 1094, 1103–05 (9th Cir. 2018)]*** likewise treats **[§ 1983]**'s limitations on injunctive relief against judicial officers as a distinct inquiry tied to whether the challenged act was judicial.

The FAC seeks prospective relief directed to allegedly unconstitutional administrative filing practices—requiring neutral receipt and routing, eliminating person-specific preclearance, preserving relevant records, and reserving substantive eligibility determinations for judicial rather than clerk-level decision—not reversal of the state judgment or control over how any state judge rules. ***[Courthouse News Service v. Planet, 750 F.3d 776, 779–93 (9th Cir. 2014)]*** is instructive: the Ninth Circuit permitted a federal constitutional challenge to the

administrative practices of a California superior-court clerk's office to proceed and rejected abstention where the requested prospective relief posed little risk of an ongoing federal audit or substantial intrusion into state judicial proceedings. ***[Id. at 791–93].***

The FAC also pleads three distinct constitutional claims—denial of access to the courts, **[First Amendment]** retaliation, and procedural due process—against Defendants in specified individual and official capacities. **[ECF No. 16 ¶¶ 54–74].** It separately seeks declaratory relief, prospective injunctive relief directed to filing access and judicial routing, preservation, expedited discovery, and individual-capacity damages. **[ECF No. 16 ¶¶ 75–80].** Unless absolute immunity disposed of every challenged function, every defendant and capacity, and every form of relief on the face of the pleading, the court was required to continue screening the remaining claims and requested relief rather than terminate the action wholesale. The blanket dismissal therefore should be vacated and remanded for claim-specific and capacity-specific screening of the actual defendants, functions, forms of relief, and constitutional claims pleaded in the operative FAC.

### F. Dismissal Without Leave to Amend Was Not Supported by a Futility Analysis Directed to the Operative FAC

The final order concluded that further amendment would be futile because the magistrate judge had correctly determined that the named Defendants were entitled to immunity. **[ECF No. 25 at 2].** That futility determination was therefore

entirely derivative of the disputed immunity ruling. If the court misidentified the particular function challenged or otherwise erred in applying absolute immunity, the final order supplies no independent basis for concluding that the operative FAC contained defects that amendment necessarily could not cure.

Nor does the amendment history establish repeated failure to cure the same deficiency. **[ECF No. 13]** dismissed the SAC on immunity grounds. Voss responded with a materially expanded TAC addressing immunity function by function. The TAC was not dismissed because that substantive response failed; **[ECF No. 15]** dismissed it under **[Rule 8]** because of its length and directed Voss to file a complete complaint limited to twenty pages. Voss complied by filing the twenty-page FAC and preserving the fuller legal analysis in a separate memorandum. Her **[Rule 72]** objections specifically identified this sequence: **immunity ruling → expanded substantive response → Rule 8 dismissal without merits adjudication of that response → court-ordered condensation → renewed immunity dismissal. [ECF No. 22 at 12–13].** That is not repeated failure to cure a previously adjudicated defect.

That chronology matters under ***[Lopez]***, ***[Rosati]***, ***[Swoben]***, and ***[Eminence Capital]***, which require substantial latitude before terminating a pro se civil-rights action without leave to amend and require more than a mechanical invocation of prior amendments to establish futility. The operative FAC materially refined the

function at issue: it distinguished ordinary technical processing from substantive eligibility gatekeeping; pleaded the status-based rejection language; identified Alleyne's supervisory role; alleged the limits of the April 22 and May 12 orders; described continuing conduct through August; separated individual- and official-capacity relief; and retained Doe Defendants whose identities depended on discovery. **[ECF No. 16 ¶¶ 2–9, 10–53].**

The final order did not identify which of those operative allegations remained deficient, what element could not be pleaded, or why no further amendment could cure any remaining defect. Instead, futility followed automatically from the antecedent immunity conclusion. Where the futility determination rests on that disputed legal premise rather than a particularized assessment of the operative pleading, dismissal without leave cannot stand independently of the immunity ruling. Accordingly, if the FAC is not permitted to proceed as pleaded, the "without leave to amend" disposition should at minimum be vacated and remanded for reconsideration of futility under the correct,

**[function-specific immunity standard]**

### G. The Rule 65 and Preservation Rulings Were Derivative of the Threshold Dismissal and Should Be Vacated or Reconsidered on Remand

The renewed **[Rule 65]** request was not denied after an independent evaluation of the complete preliminary-injunction record. The F&R first concluded, through its immunity analysis, that Voss could not state a cognizable

claim and therefore lacked even a "fair chance of success on the merits." **[ECF No. 21 at 6].** On that basis alone, it expressly declined to analyze irreparable harm, the balance of equities, or the public interest. The district court then adopted that disposition and denied **[ECF No. 17]** in the same order that dismissed the FAC without leave to amend. **[ECF No. 25 at 2].**

The **[Rule 65]** ruling was therefore derivative of the threshold immunity determination. If the immunity analysis is vacated because the court misidentified the particular function alleged or otherwise applied the wrong legal framework, the sole merits premise supporting denial of preliminary relief necessarily falls with it. Voss does not ask this Court to award every form of interim relief requested below in the first instance. Rather, the **[Rule 65]** disposition should be vacated and remanded for consideration under the correct merits framework, with the district court distinguishing among narrowly tailored preservation and neutral filing-access measures and any broader mandatory or restorative relief requiring a correspondingly developed showing.

Preservation and limited discovery are especially significant because the action was terminated before service, appearance, **[Rule 26(f)]** proceedings, merits discovery, or identification of the Doe Defendants. The FAC specifically sought preservation of electronic court logs, transaction histories, supervisor-review records, internal flags, routing notes, communications, and call recordings, as well

as narrowly tailored expedited discovery to identify the responsible clerical actors, supervisor directives, and audit histories bearing directly on both the constitutional claims and the immunity inquiry. **[ECF No. 16 ¶¶ 78–79].** Those records concern the very factual question the district court resolved at screening: what particular function Defendants actually performed.

That procedural posture also bears on the unidentified Defendants. ***[Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)]*** recognizes that where the identity of alleged defendants is unknown before filing, a plaintiff ordinarily should be afforded an opportunity through discovery to identify the responsible persons unless it is clear that discovery would not uncover their identities or that dismissal is otherwise required. Here, dismissal at the immunity threshold foreclosed the discovery through which Voss alleged the responsible actors and supervisor-level mechanisms could be identified.

Accordingly, if the threshold dismissal is vacated, the derivative denial of **[Rule 65]** relief should be vacated as well, and the case remanded for prompt consideration of the unresolved ***[Winter]*** factors, preservation of evidence, appropriately limited Doe-identification discovery, and any other narrowly tailored interim relief necessary to prevent continuing loss of evidence or further erosion of the possibility of effective relief.

### H. If the Judgment Is Vacated, the § 455(a) Issue Should Be Resolved Before Further Magistrate-Judge Participation

Before judgment, Voss moved under **[28 U.S.C. § 455(a)]** to disqualify Magistrate Judge Peterson from **further participation** and to reassign any remaining magistrate-judge proceedings. **[ECF No. 24].** The motion expressly disclaimed any contention that adverse rulings, standing alone, established bias and instead invoked the objective appearance standard—whether the cumulative, objectively verifiable record would cause a reasonable and fully informed observer to question continued participation. Voss separately filed **[ECF No. 23]** seeking expedited district-judge and de novo review of her **[Rule 72]** objections and the unresolved emergency and preservation issues.

The district court never adjudicated the **[§ 455(a)]** motion on its merits. Instead, the same order that adopted the F&R, dismissed the FAC, denied **[Rule 65]** relief, and closed the action denied **[ECF Nos. 23 and 24]** as moot. **[ECF No. 25 at 2].** To the extent mootness rested solely on termination of the action, vacatur of that judgment removes the basis for that disposition: the **[§ 455(a)]** motion again becomes practically consequential because it concerns **who may participate in the renewed proceedings on remand**.

Voss does not ask this Court to infer actual bias, improper motive, or error merely from adverse rulings. **[28 U.S.C. § 455(a)]** asks objectively whether a reasonable person with knowledge of all relevant facts would question impartiality.

***[United States v. Holland, 519 F.3d 909, 913–14 (9th Cir. 2008)]; [Liteky v. United States, 510 U.S. 540, 555 (1994)]; [In re Creech, 119 F.4th 1114, 1121 (9th Cir. 2024)].*** The motion itself sought no vacatur of prior rulings and no relitigation of immunity; it sought only disqualification from future participation and reassignment of any remaining magistrate-level proceedings.

The request for reassignment also rests on the cumulative prejudice produced by the procedural history, not merely dissatisfaction with adverse rulings. Voss alleges that the amendment-and-screening process subjected her to unusually severe procedural consequences while the underlying emergency continued to deteriorate: a substantively expanded pleading was rejected for length; she was then ordered to compress the case to twenty pages; the resulting compliant FAC was treated as though the earlier immunity defect remained uncured; thirteen specific objections challenging that premise were not individually resolved; the renewed **[Rule 65]** request rose or fell with the same threshold immunity characterization; and the **[§ 455(a)]** motion itself was extinguished as moot when judgment followed. The practical consequences were substantial. The case ended before service, discovery, preservation, Doe identification, or evidentiary development, while Voss alleged continuing loss of evidence, businesses, property interests, and meaningful remedial opportunities. In that sense, the procedural course did not merely produce an adverse ruling; it created cumulative prejudice

with potentially irreversible consequences before the challenged factual and functional premises were ever tested on a developed record.

That history is relevant to the separate question whether remand before the same judicial configuration would preserve the appearance of fair and fresh adjudication. The Ninth Circuit may direct reassignment in unusual circumstances where, among other considerations, the prior court may have difficulty putting aside views determined to be erroneous or reassignment is advisable to preserve the appearance of justice. ***[Krechman v. County of Riverside, 723 F.3d 1104, 1111–12 (9th Cir. 2013)].*** Voss does not contend that legal error alone requires reassignment. She contends that, if this Court determines that the operative pleading was repeatedly evaluated through an erroneous fixed characterization despite materially changed allegations and objections, the cumulative procedural prejudice and the unresolved **[§ 455(a)]** issue warrant a fresh judicial assignment on remand before further dispositive or emergency adjudication.

Accordingly, if the judgment is vacated, the Court should restore the unresolved **[§ 455(a)]** issue for determination before further magistrate-judge participation and should consider directing reassignment on remand to a different judicial officer so that renewed screening, preservation, discovery, and emergency matters are considered from a procedurally clean posture. At minimum, the matter should not automatically return to the same magistrate judge before the **[§ 455(a)]**

question is adjudicated. To the extent administratively available and deemed appropriate by this Court, Voss further requests assignment outside the prior district-judge/magistrate-judge pairing to ensure genuinely fresh consideration and preserve the appearance of justice.

**[ECF No. 23]** likewise served an independent procedural purpose before judgment: it sought prompt Article III review of the specific **[Rule 72]** objections and time-sensitive preservation matters. Although entry of final judgment overtook that scheduling request, its disposition as moot does not convert the underlying concerns into adjudicated issues. Vacatur should therefore return the action to a procedurally clean posture in which the district court can address the unresolved recusal, preservation, and review questions on their own terms rather than treating them as permanently foreclosed by the threshold immunity ruling.

## VIII. CONCLUSION

The Court should **vacate the September 18, 2026 Order Adopting Findings and Recommendations [ECF No. 25] and the resulting Judgment [ECF No. 26]** and remand for further proceedings. The threshold dismissal rests on two interrelated errors: the district court did not conduct the de novo determination required by **[28 U.S.C. § 636(b)(1)(C)]** as to the specifically objected-to factual and functional premises of the F&R, and the immunity analysis did not identify and evaluate the **particular function actually alleged** before extending absolute

quasi-judicial immunity. Those errors are inconsistent with ***[Orand]***, ***[Remsing]***, and ***[CPC Patent]*** and with the functional-immunity framework of ***[Forrester]***, ***[Antoine]***, ***[Castillo]***, ***[Phillips]***, and ***[Mullis]*** properly understood.

On remand, the operative Fourth Amended Complaint should be evaluated under the correct standards, including de novo determination of the specifically objected-to portions of the F&R and claim-specific screening of the **actual defendants, capacities, particular functions, constitutional claims, and forms of relief** pleaded in **[ECF No. 16].** If any claim survives screening, the action should proceed to service and appropriately tailored discovery, including discovery necessary to identify the Doe Defendants and to obtain the audit, routing, supervisor-review, flag, and communications records bearing directly on the functions performed and the asserted immunity defense.

Because **[ECF No. 25]** also denied the renewed **[Rule 65]** application and disposed of **[ECF Nos. 23 and 24]** as moot, those derivative rulings should likewise be vacated or restored for consideration on remand. The district court should promptly address preservation and any appropriately tailored interim relief under the correct merits framework. The unresolved **[§ 455(a)]** issue should be adjudicated **before further participation by the same magistrate judge**.

Given the cumulative procedural history and the substantial prejudice alleged to have resulted while the case remained confined to repeated amendment

and threshold screening, Voss further requests, if this Court deems the circumstances sufficiently unusual, **reassignment on remand to a different judicial officer or other fresh judicial configuration appropriate to preserve the appearance of justice and ensure independent consideration of the operative record**. At minimum, renewed dispositive or emergency matters should not automatically return to the same magistrate judge before the unresolved **[§ 455(a)]** question is decided.

Alternatively, if this Court concludes that the FAC contains a curable pleading deficiency, it should vacate the dismissal **without leave to amend** and remand with leave to amend under the correct legal standards.

**Voss therefore respectfully requests vacatur of [ECF Nos. 25 and 26], reversal of the threshold immunity and futility determinations to the extent necessary, and remand for proceedings consistent with this Court's decision.**

Dated: October 5, 2026

Respectfully submitted,

Elizabeth M. Voss, Appellant, Pro Se

**STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, Appellant is unaware of any related case currently pending in this Court. A prior original mandamus proceeding arising from the same district-court case, In re Elizabeth M. Voss, Ninth Cir. No. 26-5441, was denied and closed on August 25, 2026. Appellant identifies that closed proceeding here for procedural transparency, while recognizing that Circuit Rule 28-2.6 addresses related cases currently pending.

**CERTIFICATE OF COMPLIANCE**

This brief contains **13,902** words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), and is intended to comply with the applicable word limit. It has been prepared in 14-point Times New Roman, a proportionally spaced serif typeface, with body text double-spaced. Final word count, caption, appellate case number, and all bracketed record references must be updated before filing.

Dated: October 5, 2026

s/ Elizabeth M. Voss

Elizabeth M. Voss, Appellant, Pro Se

## ADDENDUM

Pertinent constitutional, statutory, and rule provisions bearing directly on the issues presented are set out below. California provisions reflect the text operative in 2026. Ellipses indicate omitted text where only pertinent portions are reproduced.

### UNITED STATES CONSTITUTION

**U.S. Constitution, First Amendment (pertinent part)**

Congress shall make no law ... abridging ... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**U.S. Constitution, Fourth Amendment (pertinent part)**

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

**U.S. Constitution, Fourteenth Amendment, § 1 (pertinent part)**

No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### FEDERAL STATUTES AND RULES

**28 U.S.C. § 636(b)(1)(C) (pertinent part)**

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

**28 U.S.C. § 1915(e)(2)(B) (pertinent part)**

The court shall dismiss the case at any time if the court determines that the action or appeal— ... (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

**28 U.S.C. § 455(a)**

Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**42 U.S.C. § 1983 (pertinent part)**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Federal Rule of Civil Procedure 72(b)(3)**

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

**Federal Rule of Civil Procedure 65(a)(2) (pertinent part)**

Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

**CALIFORNIA CODE OF CIVIL PROCEDURE**

**Cal. Civ. Proc. Code § 367**

Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.

**Cal. Civ. Proc. Code § 387 - Intervention (pertinent parts)**

(b) An intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons by doing any of the following:

(1) Joining a plaintiff in claiming what is sought by the complaint.

(2) Uniting with a defendant in resisting the claims of a plaintiff.

(3) Demanding anything adverse to both a plaintiff and a defendant.

(c) A nonparty shall petition the court for leave to intervene by noticed motion or ex parte application. The petition shall include a copy of the proposed complaint in intervention or answer in intervention and set forth the grounds upon which intervention rests.

(d)(1) The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if either of the following conditions is satisfied:

(A) A provision of law confers an unconditional right to intervene.

(B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties.

(d)(2) The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the

matter in litigation, or in the success of either of the parties, or an interest against both.

(e) If leave to intervene is granted by the court, the intervenor shall do both of the following:

(1) Separately file the complaint in intervention, answer in intervention, or both.

(2) Serve a copy of the order, or notice of the court's decision or order, granting leave to intervene and the pleadings in intervention as provided by the statute.

**Cal. Civ. Proc. Code § 389(a) - Compulsory Joinder**

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed

interest. If he has not been so joined, the court shall order that he be made a party.

**Cal. Civ. Proc. Code § 473 (2026 operative version; pertinent parts)**
(a)(1) The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; and may, upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars; and may upon like terms allow an answer to be made after the time limited by this code.

(b) The court may, upon any terms as may be just, relieve a party or the party's legal representative from a judgment, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect. ...

(d) The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order.

**Cal. Civ. Proc. Code § 526(a) - Injunction (pertinent parts)**

(a) An injunction may be granted in the following cases:

(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

(4) When pecuniary compensation would not afford adequate relief.

(5) Where it would be extremely difficult to ascertain the amount of

compensation which would afford adequate relief.

(6) Where the restraint is necessary to prevent a multiplicity of judicial proceedings.

**Cal. Civ. Proc. Code § 527 - Preliminary Injunction / Temporary Restraining Order (pertinent parts)**

(a) A preliminary injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor. No preliminary injunction shall be granted without notice to the opposing party.

(c) No temporary restraining order shall be granted without notice to the opposing party, unless both of the following requirements are satisfied:

(1) It appears from facts shown by affidavit or by the verified complaint that great or irreparable injury will result to the applicant before the matter can be heard on notice.

(2) The applicant or the applicant's attorney certifies one of the following to the court under oath:

(A) That within a reasonable time prior to the application the applicant informed the opposing party or the opposing party's attorney at what time

and where the application would be made.

(B) That the applicant in good faith attempted but was unable to inform the opposing party and the opposing party's attorney, specifying the efforts made to contact them.

(C) That for reasons specified the applicant should not be required to so inform the opposing party or the opposing party's attorney.

(d)(1) The matter shall be made returnable on an order requiring cause to be shown why a preliminary injunction should not be granted, on the earliest day that the business of the court will admit of, but not later than 15 days or, if good cause appears to the court, 22 days from the date the temporary restraining order is issued.

**CALIFORNIA RULES OF COURT**

**Cal. Rules of Court, rule 3.1200 - Application**

The rules in this chapter govern ex parte applications and orders in civil cases, unless otherwise provided by a statute or a rule. These rules may be referred to as "the ex parte rules."

**Cal. Rules of Court, rule 3.1202(c) - Affirmative factual showing required**

An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of

irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.

**Cal. Rules of Court, rule 3.1203(b) - Time of notice in unlawful detainer proceedings**

A party seeking an ex parte order in an unlawful detainer proceeding may provide shorter notice than required under (a) provided that the notice given is reasonable.

**Cal. Rules of Court, rule 3.1205 - Filing and presentation of the ex parte application**

Notwithstanding the failure of an applicant to comply with the requirements of rule 3.1203, the clerk must not reject an ex parte application for filing and must promptly present the application to the appropriate judicial officer for consideration.

**Cal. Rules of Court, rule 3.1150(a) - Preliminary injunctions and bonds (pertinent part)**

A party requesting a preliminary injunction may give notice of the request to the opposing or responding party either by serving a noticed motion under Code of Civil Procedure section 1005 or by obtaining and serving an order to show cause (OSC). An OSC must be used when a temporary restraining order (TRO) is sought, or if the party against whom the preliminary injunction is sought has not appeared in the action. If the

responding party has not appeared, the OSC must be served in the same manner as a summons and complaint.

**SACRAMENTO SUPERIOR COURT LOCAL RULES RELIED UPON IN THE F&R**

The September 11, 2026 Findings and Recommendations cited Sacramento Superior Court Local Rules 1.21(E), 7.37(A), and 7.37(C) in concluding that the clerk's office possessed "at least some authority" to reject filings determined to be "unacceptable for filing." The pertinent rule text is set out below. Rule 7.37 appears in Chapter 7 of the Sacramento Superior Court Local Rules, captioned "Juvenile Dependency."

**Sacramento Superior Court Local Rule 1.21(E) - Rejected Filings (as cited in the F&R; 2026 operative numbering)**

If an electronically transmitted document is submitted to the court but subsequently determined to be unacceptable for filing, the clerk shall cause to be electronically transmitted to the filer a notice of rejection of the document for filing with the court. The notice shall set forth the grounds for rejection of the document. It shall be the responsibility of the filer to resubmit rejected documents, with appropriate corrections and any required filing fee, to the court for filing. The court will retain a log confirming the rejection of electronically transmitted documents.

**Chapter 7 - Juvenile Dependency**

**Sacramento Superior Court Local Rule 7.37 - Juvenile Electronic Filing Process (pertinent parts)**

Electronically transmitted documents must be both submitted to the court and accepted for filing by the court, as described below, in order to be considered duly filed with the court in accordance with these rules and Local Rule 1.21 and 1.22.

(A) Date/Time of Filing.

A document may be electronically transmitted to the court at any time of the day. Acceptance of the document for filing shall be deemed to occur on the date the document was submitted to the court if the submission occurred between 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding court holidays. Documents submitted after 4:00 p.m. shall be deemed accepted on the next business day the clerk's office is open for business. Nothing in this section shall limit the clerk's ability to reject filings.

(B) Acceptance of Filing.

Documents electronically submitted to the court for filing shall be reviewed by the clerk for required data elements. The confirmation of the filing of the document by the court and verification of the accuracy of the document filed by the court shall be the sole responsibility of the filer.

(C) Rejected Filings.

If an electronically transmitted document is submitted to the court and determined to be unacceptable for filing, a notice of rejection of the document shall be electronically transmitted to the filer by the clerk, notwithstanding the filer's compliance with paragraph (A) above. The notice shall set forth the grounds for rejection of the document. It shall be the responsibility of the filer to resubmit rejected documents, with appropriate corrections, to the court for filing.

Source note: Rule 7.37 is included here because the F&R expressly relied on subdivisions (A) and (C). Its placement in Chapter 7 - Juvenile Dependency is reproduced to identify the scope and context of the cited local rule; the applicability and legal effect of that rule are matters addressed in Appellant's argument.